**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|       ) | |
| Plaintiff,    ) | |
|       ) | |
| v.    ) | Case No. 07-20099-JWL |
|       ) | |
| TRINIDAD MARQUEZ-MARTINEZ (09),    ) | |
|       ) | |
| Defendant.    ) | |
|       ) | |
| _____) | |

### MEMORANDUM AND ORDER

The court denies Mr. Marquez-Martinez's Motion for Reconsideration (Doc. 407). In his motion for reconsideration, Mr. Marquez-Martinez suggests that this court's denial of his motion to suppress "incorrectly applie[d] the factual record to the law governing the collective knowledge doctrine." Memorandum Supporting Defendant's Motion for Reconsideration, Doc. 408, at 1. Mr. Marquez-Martinez is correct that Lt. Mora was not told the factual information constituting probable cause by the DEA agent who requested Lt. Mora attempt to locate a particular vehicle traveling northbound on Interstate 25 from Albuquerque; nor did Lt. Mora act on an explicit order or request to detain and search Mr. Marquez-Martinez's vehicle. To the extent that this court's prior Memorandum and Order on Mr. Marquez-Martinez's motion to suppress could be read as casting the communication between Lt. Mora and the Albuquerque-based DEA agent in this light, the court now clarifies this was not its intention. Nonetheless, the court

believes the Tenth Circuit Court of Appeals would conclude that because the officers with probable cause were functioning as a team with the officer who executed the search, the collective knowledge doctrine applies to validate the search.

Here, the court is not dealing with a scenario where an individual officer stops a vehicle and retrospectively seeks to bootstrap probable cause from information known to other agencies without prior communication with them. Rather, Lt. Mora and the DEA were implicitly acting as a team with respect to the search of Mr. Marquez-Martinez's vehicle. Several facts which were established at the hearing without contradiction are integral to this conclusion. Lt. Mora was an officer whose duties focused on criminal interdiction. As discussed in his re-direct examination by Mr. Zabel for the government, Lt. Mora on the day in question supervised a special operation division that focused on criminal interdiction. It was common for him to be contacted by agents of the DEA to assist in their operations. This particular morning Lt. Mora was contacted by an Albuquerque-based DEA agent with whom he had previously worked and was asked to attempt to locate by description the vehicle in which Mr. Marquez-Martinez was a passenger. Lt. Mora was given specific information regarding the make, model, and color as well as direction of travel on Interstate 25. He was not told any more information and was not expressly ordered to stop the vehicle based on the DEA's belief it had probable cause.

While the Tenth Circuit has not directly addressed a situation like this where the law enforcement officer with knowledge of the probable cause basis did not either

2

convey this basis to the executing officer or issue a direct order or request to the executing officer, this court believes that the communication between Lt. Mora and the DEA was sufficient for the collective knowledge doctrine to apply. *See United States v. Chavez*, 534 F.3d 1338, 1347 n.13 (10th Cir. 2008) (explaining there must be some communication between the officer with probable cause and the officer who executed the search to confirm they are acting as a team). The call between Lt. Mora and the DEA agent was an implicit request by the DEA for Lt. Mora to pull the vehicle over and to do so on any traffic infraction committed in Lt. Mora's presence in order to protect the confidentiality of the investigation.[1]

In *Chavez*, the Tenth Circuit repeatedly cites and discusses a Ninth Circuit case, *United States v. Ramirez*, 473 F.3d 1026, 1031-37 (9th Cir. 2007), which rejects the limitations Mr. Marquez-Martinez attempts to put on the collective knowledge doctrine. The factual situation in *Ramirez* is analogous to the factual situation presented by Mr. Marquez-Martinez. The officers investigating a drug trafficking operation sent out a request over the police radio that a uniformed officer make a "traffic stop" of the suspected drug-trafficking vehicle.[2] *Id.* at 1029. These officers explained that they

---

[1]DEA Agent Dorley testified that while he was not aware of what the Albuquerque-based DEA agent told Lt. Mora, the purpose of executing a "walled-off stop" was to protect the confidentiality of the ongoing drug trafficking investigation.

[2]The court recognizes that in *Ramirez* the police officer was explicitly ordered to execute a traffic stop, while in Mr. Marquez-Martinez's case the order to Lt. Mora was implicit. However, the court is unpersuaded that this distinction makes a difference in

(continued...)

decided on this tactic "'in order to avoid alerting the occupants of the [vehicle] of an ongoing drug investigation and for officer safety reasons.'" *Id.* The officer who executed the "traffic stop" explained that while he was aware the request came from the head of the vice/narcotics detail and believed that the request was related to an ongoing narcotics investigation, he was not actually told any details about the probable cause basis for the stop. *Id. Ramirez* makes clear that the collective knowledge doctrine does not have a "coordinated-investigation" or a "minimal communication" requirement. *Id.* Specifically, the *Ramirez* defendants, like Mr. Marquez-Martinez here, argued that because the executing officer was only conducting a "traffic stop" and not actually motivated by a suspicion of drug trafficking, the collective knowledge doctrine did not apply. The Ninth Circuit rejected the defendants' argument, stating cases of various circuits

> cut against the [defendants'] view of the collective knowledge doctrine. In each case, the officer conducting the stop, search or arrest was given little more than an order or request; the investigating officer or agent simply provided a description of the suspect, thus pointing out *who* was the target. In none of these cases did the investigating officer relay to the second officer the factual basis for his determination that reasonable suspicion or probable cause existed.

*Id.* at 1036 (emphasis in the original). Cases discussing the collective knowledge doctrine also do not require that the investigating officer be told why a defendant should be seized. *Id. Ramirez* explains that "placing such a limitation on the collective

---

[2](...continued)
the analysis of whether the collective knowledge doctrine applies.

knowledge doctrine would go far beyond the purpose of 'distinguish[ing] officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject.'" *Id.* (quoting *United States v. Terry*, 400  F.3d 575, 581 (8th Cir. 2005)); *see also United States v. Bernard*, 623 F.2d 551, 561 (9th Cir. 1980) ("The officers involved were working in close concert with each other and the knowledge of one of them was the knowledge of all." (internal quotation marks omitted)).  Therefore, the critical inquiry in the application of the collective knowledge doctrine appears to be whether the various law enforcement officers were working as a team.

Lt. Mora was not investigating Mr. Marquez-Martinez independently; he acted only because of a communication from a fellow law enforcement officer.   Based on a totality of the circumstances, the DEA and Lt. Mora had probable cause to stop and search Mr. Marquez-Martinez's vehicle based upon the knowledge common to all the law enforcement officers involved.  Therefore, this court concludes that the amount of information conveyed to Lt. Mora is not legally significant, and despite the fact Lt. Mora was not told the factual basis of probable cause or given an explicit order or request to stop the vehicle, the common knowledge doctrine still applies to validate the search of Mr. Marquez-Martinez's vehicle.

IT IS THEREFORE ORDERED BY THE COURT THAT Mr. Marquez-Martinez's Motion for Reconsideration (Doc. 407) is denied.

IT IS SO ORDERED.

5

Dated this 30th day of January, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge